**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                    No. 95-6773

PHILLIP CHESTNUT MCLAMB,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-91-46-F, CA-94-852-CV-5-F)

Argued: November 1, 1995

Decided: February 26, 1996

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed in part, vacated in part and remanded for resentencing by
unpublished opinion. Judge Hamilton wrote the opinion, in which
Judge Michael joined. Judge Niemeyer wrote a separate concurring
opinion.

_____

**COUNSEL**

**ARGUED:** James Baxter Rivenbark, Greensboro, North Carolina, for
Appellant. Barbara Dickerson Kocher, Assistant United States Attor-
ney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice Mc-
Kenzie Cole, United States Attorney, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

HAMILTON, Circuit Judge:

Phillip Chestnut McLamb (McLamb) appeals from the district court's denial of his motion pursuant to 28 U.S.C.A.§ 2255 (West 1994), collaterally attacking his convictions for money laundering, see 18 U.S.C.A. § 1956(a)(3) (West Supp. 1995), and transaction structuring, see 26 U.S.C.A. (I.R.C.) § 6050I(f)(1) (West Supp. 1995), and his sentence flowing therefrom. For reasons that follow, we affirm McLamb's convictions, but vacate his sentence and remand for resentencing consistent with this opinion.

I.

The facts of this case are fully set forth in our opinion on direct appeal, see United States v. McLamb, 985 F.2d 1284, 1286-87 (4th Cir. 1993), and thus, we restate them only insofar as is necessary to resolve this appeal. McLamb's charges stemmed from two separate incidents connected with a car dealership he owned. The first incident took place in July 1990 with McLamb structuring the sale of a Ford van for the purpose of evading the Internal Revenue Service (IRS) reporting requirement in violation of I.R.C. § 6050I(f)(1). The second incident took place in August 1990 with McLamb laundering "sting" money during the sale of a Lincoln Town Car to an undercover government agent in violation of 18 U.S.C.A. § 1956(a)(3). The undercover agent told McLamb that his brother-in-law wanted to purchase a car with money that had its origin in the sale of illegal drugs. The money was, in fact, "sting" money, provided by the government for the purpose of conducting the undercover sting operation. McLamb offered to accept the money for purchase of the car and told the undercover officer exactly how to structure the transaction to avoid IRS reporting requirements. On the day of the contemplated sale, McLamb instructed the financial officer employed by the dealership to prepare documents for the sale of the Lincoln Town Car in the

2

name of the alleged brother-in-law. The record contains no evidence that indicates the financial officer had any knowledge of the alleged illegal source of the "sting" money. The sting ended when McLamb allowed the financial officer to accept the "sting" money.

McLamb was subsequently indicted on multiple charges arising out of these two incidents. The jury ultimately convicted McLamb of two of them, money laundering arising out of the sting incident with the undercover agent in violation of 18 U.S.C.A. § 1956(a)(3) and transaction structuring arising out of the Ford van sale in violation of I.R.C. § 6050I(f)(1).

McLamb was sentenced on March 9, 1992. The district court calculated McLamb's total offense level on the money laundering count at twenty-five and his total offense level on the transaction structuring count at twenty. McLamb had a criminal history category of I. In reaching the total offense level of twenty-five on the money laundering count, the district court enhanced McLamb's base offense level of twenty, see United States Sentencing Commission, Guidelines Manual (USSG) § 2S1.1(a)(2), by two-levels for McLamb's role in the offense as an organizer or leader, see USSG § 3B1.1(c) (Nov. 1991), and by three levels under the 1991 version of USSG § 2S1.1(b)(1) for knowing and believing the funds involved were "the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances," USSG § 2S1.1(b)(1) (Nov. 1991). Both enhancements taken together increased McLamb's sentencing range from thirty-three to forty-one months' imprisonment to fifty-seven to seventy-one months' imprisonment.[1] The district court sentenced McLamb to seventy-one months' imprisonment.[2]

_____

[1] The three-level enhancement taken alone raised McLamb's total offense level from level twenty-two to level twenty-five, thus increasing his sentencing range from forty-one to fifty-one months' imprisonment to fifty-seven to seventy-one months' imprisonment. The two-level enhancement taken alone raised McLamb's total offense level from level twenty-three to level twenty-five, thus increasing his sentencing range from forty-six to fifty-seven months' imprisonment to fifty-seven to seventy-one months' imprisonment.

[2] Grouping both counts and using the count with the highest offense level, see USSG § 3D1.2(d), the district court used the offense level twenty-five from the money laundering count as McLamb's total offense level in calculating his sentencing range. Without explanation, the district court also sentenced McLamb separately on the transaction structuring count to sixty months' imprisonment to run concurrently.

3

McLamb appealed and we affirmed. See McLamb, 985 F.2d at 1284. McLamb then filed a motion in the district court under 28 U.S.C.A. § 2255 collaterally attacking his convictions and sentence. In his motion, McLamb claimed that his convictions violated the bar of double jeopardy, the Fourth Amendment's prohibition against illegal searches and seizures, and his Sixth Amendment right to effective assistance of counsel. He also claimed the indictment was insufficient to charge him with money laundering. Next, McLamb claimed the district court's application of the 1991 version of USSG § 2S1.1(b)(1) violated the Ex Post Facto Clause. Finally, McLamb claimed the district court erroneously increased his base offense level by two levels pursuant to USSG § 3B1.1(c) for his role as an organizer or leader in a criminal activity. The district court denied the motion in toto. This appeal followed.

II.

While McLamb has raised several claims in his § 2255 motion, only two merit discussion.

A.

In the first claim meriting discussion, McLamb contends that his sentence should be vacated and his case should be remanded for resentencing because the district court's three-level increase in his base offense level on the money laundering count pursuant to the 1991 version of USSG § 2S1.1(b)(1) violated the Ex Post Facto Clause of the Constitution, see U.S. Const. art. I, § 9, cl. 3. Arguing McLamb did not suffer an ex post facto violation, the government contends that McLamb should be denied relief. We agree with McLamb.**3**

_____

**3** Ordinarily, the government's interest in finality of its criminal judgments bars our review of § 2255 claims that could have been raised on direct appeal but were not. See United States v. Metzger, 3 F.3d 756, 757-58 (4th Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994). See also United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). However, if the government fails to assert this bar, the bar is waived and the cause and prejudice standard is not applied. Metzger 3 F.3d at 757. Under such circumstances, it is said that "the government fail[s] to vindicate" its

As a general rule, a defendant's sentence should be based upon the United States Sentencing Guidelines "in effect on the date the defendant is sentenced." 18 U.S.C.A. § 3553(a)(4) (West Supp. 1995). However, amendments to the Sentencing Guidelines occurring after a defendant's offense of conviction but before sentencing should not be applied if doing so would increase his sentence. See United States v. Morrow, 925 F.2d 779, 782-83 (4th Cir. 1991). Such an increase would violate the Ex Post Facto Clause in Article I, Section 9, Clause 3 of the Constitution, which provides that neither Congress nor any State shall pass any "ex post facto Law." U.S. Const. art. I, § 9, cl. 3; see Collins v. Youngblood, 497 U.S. 37, 41 (1990) (stating that under the Ex Post Facto Clause, legislatures may not retroactively increase the punishment for criminal acts). We now turn to consider whether McLamb has suffered an ex post facto violation.

When McLamb's criminal activities ended in August 1990, USSG § 2S1.1(b)(1) provided a three-level sentencing enhancement for a defendant convicted of money laundering, "[i]f the defendant knew that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances." USSG § 2S1.1(b)(1) (Nov. 1989) (emphasis added). The enhancement did not apply to the target of a government sting, who like McLamb, could not know that the funds were the proceeds of unlawful activity. See United States v. Barton, 32 F.3d 61 (4th Cir. 1994) (holding that under the 1989 version of USSG § 2S1.1(b)(1), a defendant's actual knowledge of the source of the funds was required to trigger enhancement, not mere belief, as can only be the case when sting money is involved). However, by the time of McLamb's sentencing on March 9, 1992, USSG § 2S1.1(b)(1) had been amended to provide a three-level sentencing enhancement for a defendant convicted of money laundering, "[i]f the defendant knew or believed that the funds were the proceeds of an unlawful activity

_____

interest in finality. Id. In this court, the government proffered that the appropriate standard of review for this claim is de novo, see Appellee's Brief at 3, and has not argued that McLamb's failure to raise this claim on direct appeal is bar to our review. Therefore, the government has waived any bar that would apply to our review of this claim as a result of McLamb's failure to raise it on direct appeal.

5

involving the manufacture, importation, or distribution of narcotics or other controlled substances." USSG § 2S1.1(b)(1) (Nov. 1991) (emphasis added). The amended version of USSG § 2S1.1(b)(1) does apply to a defendant who is the target of a government sting. See Barton, 32 F.3d at 67 ("The amendment of the guideline to add the words `or believed' was, according to the statement of purpose, a `revis[ion] . . . to reflect the enactment' of a new law designed to net targets of government stings who could not know in fact that the money was from illegal trade.").

Under these circumstances, the district court's application of the 1991 version of USSG § 2S1.1(b)(1) to increase McLamb's base offense level by three levels violated the Ex Post Facto Clause. The district court used the 1991 version of the Sentencing Guidelines to determine McLamb's sentence. Because the money involved in the money laundering count was "sting" money, McLamb would have been subject to a three-level enhancement under the 1991 version of USSG § 2S1.1(b)(1) but not under the 1989 version. Enhancement of McLamb's base offense level pursuant to the 1991 version of USSG § 2S1.1(b)(1) increased the legal consequences of McLamb's acts that were completed before the effective date of the 1991 version in violation of the Ex Post Facto Clause. The enhancement raised McLamb's total offense level from level twenty-two to twenty-five, thus increasing his sentencing range from forty-one to fifty-one months' imprisonment to fifty-seven to seventy-one months' imprisonment. In light of our conclusion that an ex post facto violation has occurred, we vacate McLamb's sentence and remand for resentencing using the 1989 version of USSG § 2S1.1(b)(1).**4**

_____

**4** The government also argues that Barton announces a new rule for purposes of Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion), and its progeny, and thus asserts that we are barred from applying our decision in Barton to conclude that the district court's three-level enhancement of McLamb's base offense level under the 1991 version of USSG § 2S1.1(b)(1) violated the Ex Post Facto Clause. The government's argument is without merit. Teague does not bar the retroactive application on collateral review of a decision concerning the reach of a federal statute, or as here, a sentencing guideline. See United States v. Dashney, 52 F.3d 298, 299 (10th Cir. 1995); United States v. McClelland, 941 F.2d 999, 1001 (9th Cir. 1991); United States v. Tayman , 885 F. Supp. 832 (E.D.

6

B.

In the second claim meriting discussion, McLamb seeks vacatur of his sentence and resentencing on his claim that the district court erred by increasing his base offense level on the money laundering count by two-levels for his role as an organizer or leader in a criminal activity. See USSG § 3B1.1(c).**5** The core of McLamb's claim is that he did not organize or lead anyone who qualified as a "participant" in the conduct of criminal activity, and that an amendment to the commentary of USSG § 3B1.1 after his sentencing makes clear that an enhancement under USSG § 3B1.1 is inappropriate unless he did. See USSG § 3B1.1, comment. (n.2) (Nov. 1993). According to McLamb, the 1993 amendment applies retroactively, because although the Sentencing Commission did not list it as one of the amendments having retroactive effect under USSG § 1B1.10, it did characterize the amendment as "clarif[ying]". USSG, App. C, amd. 500 (effective Nov. 1, 1993).

USSG § 3B1.1 provides as follows:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

_____

Va. 1995); cf. United States v. Bonnette, 781 F.2d 357, 362-364 (4th Cir. 1986) (pre-Teague decision allowing federal habeas prisoner to assert claim for collateral relief based on a subsequent Supreme Court opinion construing a federal criminal statute to exclude the conduct underlying the prisoner's conviction).

**5** This claim was also not raised on direct appeal. In this court, the government has not asserted that McLamb's failure to raise this claim on direct appeal bars our review. Therefore, the government has waived any bar that would apply to our review of this claim as a result of McLamb's failure to raise it on direct appeal. See Metzger, 3 F.3d at 757-58; supra, note 3.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

At sentencing, the presentence report recommended a two-level increase in McLamb's base offense level on the money laundering count under USSG § 3B1.1(c), stating that McLamb "was an organizer and leader of a criminal act." (J.A. 380). The district court adopted this recommendation and finding without comment.

A year and a half after McLamb was sentenced, the Sentencing Commission amended the commentary to USSG § 3B1.1 by adding a new Application Note 2:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless had management responsibility over the property, assets, or activities of a criminal organization.

USSG § 3B1.1, comment. (n.2) (Nov. 1993). The Commission stated that this amendment "clarifies the operation of[USSG § 3B1.1] to resolve a split among the courts of appeal." USSG, App. C, amd. 500 (effective Nov. 1, 1993). The split, between the First, Third, Sixth and Ninth circuits on the one hand [6] and the

_____

[6] **See United States v. Fuentes**, 954 F.2d 151 (3d Cir.), cert. denied,112 S. Ct. 2950 (1992) (requiring degree of control over other persons for USSG § 3B1.1 to apply); United States v. Mares-Molina, 913 F.2d 770 (9th Cir. 1990) (same); United States v. Fuller , 897 F.2d 1217 (1st Cir. 1990) (same); United States v. Carroll, 893 F.2d 1502 (6th Cir. 1990) (same).

8

Fourth[7] on the other, concerned whether an enhancement under USSG § 3B1.1 was appropriate if the defendant had only exercised control over property, assets, or criminal activity with no exercise of control over one or more participants. In Chambers, 985 F.2d at 1263, our circuit took the view that a defendant's management control over property, assets, or criminal activities could trigger enhancement. Id. at 1268. The 1993 amendment to the commentary of USSG § 3B1.1 is not listed in USSG § 1B1.10, which sets forth the amendments that may apply retroactively to reduce a defendant's sentence. See United States v. Capers, 61 F.3d 1100, 1109 (4th Cir. 1995).

McLamb argues the amendment is clarifying rather than a substantive change in the law, and thus should be applied retroactively to reduce his sentence despite the fact USSG § 1B1.10 does not list it as an amendment having retroactive effect, see id. (court may apply a post-sentence clarifying amendment even though USSG § 1B1.10 does not list it as having retroactive effect). In Capers, we recently rejected this very argument, holding the 1993 amendment to the commentary of USSG § 3B1.1 is not clarifying, but amounts to a substantive change in the law, and thus, may not be applied retroactively to reduce a defendant's sentence. Id. at 1112-1113. After application of several factors used for distinguishing between a clarifying amendment and an amendment that changes substantive law, we concluded that the amendment:

> is not a mere clarification because it works a substantive change in the operation of the guideline in this circuit. The amendment has the effect of changing the law in this circuit. Before the amendment, a defendant in this circuit could receive the enhancement without having exercised control over other persons; after the amendment, the defendant must have exercised control over other persons to warrant the enhancement.

Id. at 1110 (emphasis added).

_____

[7] See United States v. Chambers , 985 F.2d 1263 (4th Cir.) (defendant may be a "manager" even though he did not directly supervise other persons), cert. denied, 114 S. Ct. 107 (1993).

9

Although we are convinced that had McLamb been sentenced after the effective date of the amended commentary, the enhancement would have been inappropriate,**8** under Capers, we may not apply the 1993 amendment retroactively, and thus, the question becomes whether the district court appropriately applied the enhancement under the pre-amendment state of the law. We believe the district court correctly applied the enhancement. McLamb initiated the money laundering transaction with the undercover agent and told him exactly how to structure the transaction to avoid the IRS reporting requirement. McLamb also directed a person under his employ, the financial officer, to prepare a document necessary to complete the money laundering transaction. Thus, although McLamb did not exercise control over "participants" as is now required under the amended version of USSG § 3B1.1, he exercised sufficient control over the criminal activity to warrant the enhancement under pre-amendment law. Accordingly, we affirm the district court's denial of McLamb's motion on this claim.

C.

We are left with the consideration of McLamb's appropriate sentencing range on remand. Upon resentencing, the district court will be confronted with an offense level of twenty-two on the money laundering count and twenty on the transaction structuring count. Grouping both offense levels, see USSG § 3D1.2(d), McLamb will have a combined offense level of twenty-two. An offense level of twenty-two will combine with McLamb's criminal history category of I to produce a sentencing range of forty-one to fifty-one months' imprisonment. Our vacation of McLamb's sentence includes the sixty month

_____

**8** Other than McLamb, the conduct underlying McLamb's money laundering conviction only involved the undercover agent and the financial officer; neither may count as a participant, because neither were criminally responsible for the commission of the offense. See USSG § 3B1.1, comment. (n.1) (Nov. 1991) ("A `participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.").

concurrent sentence the district court gave McLamb on the transaction structuring count.**9**

III.

In sum, we hold the district court's application of the 1991 version of USSG § 2S1.1(b)(1) to increase McLamb's base offense level on the money laundering count violated the Ex Post Facto Clause. Accordingly, we vacate McLamb's sentence and remand for resentencing consistent with this opinion. In addition to concluding McLamb's claim pertaining to the organizer or leader enhancement under USSG § 3B1.1(c) is without merit, we have reviewed McLamb's remaining claims and conclude they are without merit. We, therefore, affirm the district court's judgment in all other respects.

AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR RESENTENCING

NIEMEYER, Circuit Judge, concurring:

I concur in the opinion of the court except for footnote 3. I cannot join in footnote 3 because it suggests that we obtained our right to review the sentence in this case because "the government has waived any bar that would apply to our review of this claim." In my opinion, the government waived no rights. I believe that the defendant has a substantive right to review an illegal sentence despite his failure to appeal the issue, and I do not believe that we could permit a defendant to remain in prison under an illegal sentence. See 28 U.S.C. § 2255; Sanders v. United States, 373 U.S. 1, 12 (1963) (§ 2255 was enacted to provide expeditious remedy for correcting erroneous sentences of federal prisoners without resort to habeas corpus).

_____

**9** Under the grouping principle of USSG § 3D1.2(d), on remand the district court may not give McLamb a separate sentence on the transaction structuring count.

11