**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0182n.06
Filed: March 6, 2009

**No. 07-4521**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JEFFREY MICHAEL JANNUZZI, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**Before: RYAN, GIBBONS, AND SUTTON, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Jeffrey Michael Jannuzzi seeks to withdraw his guilty plea to a three-count indictment that resulted from his possession of child pornography on his home computer. Because we, like the district court, find that Jannuzzi has failed to meet his burden to demonstrate "a fair and just reason for requesting the withdrawal," we affirm.

**I.**

On April 11, 2007, a federal grand jury returned an indictment charging Jannuzzi with receiving and distributing visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); receiving and distributing child pornography, in violation of 18

1

U.S.C. § 2252A(a)(2)(A); and possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The charges arose from an investigation conducted by an undercover Federal Bureau of Investigation ("FBI") agent in Miami, Florida. On April 6, 2006, the undercover agent downloaded three image files of actual minors engaged in sexually explicit conduct from Jannuzzi's computer using peer-to-peer file sharing software. Jannuzzi's computer was located at his home in Amherst, Ohio. Following the seizure of Jannuzzi's computer, investigators determined that Jannuzzi had downloaded from the Internet a total of 76 image files and 36 video files of minors engaged in sexually explicit conduct using the file-sharing software. Because of the nature of the software, these files were available to any individual with access to a computer with a similar peer-to-peer file-sharing program.

Jannuzzi agreed to plead guilty in a formal agreement with the government. The agreement was negotiated between Jannuzzi, his then-attorney Jack W. Bradley, and the Assistant United States Attorney Michael Sullivan. Jannuzzi's plea agreement explained in detail the elements of each charge to which Jannuzzi agreed to plead guilty. It also expressly waived Jannuzzi's right to a trial and stipulated to the advisory Sentencing Guidelines enhancements that would apply, leaving open the determination as to Jannuzzi's criminal history category. Immediately after discussing the maximum sentence Jannuzzi faced on each of the three criminal charges, the plea agreement stated:

> **Minimum sentence must include imprisonment.** The sentence for the offenses charged in counts 1 & 2 may not be satisfied by a term of probation and must include a period of imprisonment not less than 5 years.

The plea agreement then went on to acknowledge that Jannuzzi had "fully discussed with [his] attorney" the content of the agreement and "had sufficient time and opportunity to discuss all aspects

2

of the case in detail with [his] attorney." Thus, the agreement declared that Jannuzzi was "satisfied" with his attorney's assistance and entered into the agreement voluntarily. Jannuzzi signed the agreement and also initialed every page.

On August 7, 2007, the same date Jannuzzi signed the plea agreement, the district court conducted a change-of-plea hearing. In an extensive and thorough colloquy, the district judge went over each major element of the plea agreement, specifically noting the mandatory-minimum five-year prison sentence. The district court gave Jannuzzi multiple opportunities to ask questions. Jannuzzi also indicated, in response to questioning from the district court, that he was satisfied with the representation provided by his attorney Bradley and had had enough time to review fully the plea agreement. Following the colloquy, the district court accepted Jannuzzi's guilty plea on all three counts of the indictment.

Bradley moved to withdraw as Jannuzzi's attorney on August 31, 2007. The district court granted Bradley's motion after Jannuzzi obtained his new counsel, Laurence A. Turbow, on September 6. The very next day, Turbow filed a motion to withdraw Jannuzzi's guilty plea on the grounds that Bradley had "pressured" Jannuzzi into agreeing to the plea deal, Jannuzzi only had twenty minutes to read the plea agreement prior to the hearing, and Jannuzzi did not fully comprehend "the full impact of his plea agreement."

The district court held a hearing on Jannuzzi's motion on September 24, 2007. After listening to arguments from both Turbow and the government, the district court concluded that Jannuzzi had failed to establish a fair and just reason for withdrawing his plea and therefore denied his motion. At the later sentencing hearing, the district court sentenced Jannuzzi according to the terms of the plea agreement. The district court granted a three-level departure for cooperation and

3

determined that his criminal history category was the lowest, Level I. Jannuzzi received a total effective sentence of 151 months' imprisonment, the lowest amount recommended under the advisory Guidelines. This timely appeal of the district court's denial of Jannuzzi's motion to withdraw his guilty plea followed.

**II.**

We review the denial of a motion to withdraw a guilty plea under Federal Rule of Criminal Procedure 11(d) under an abuse-of-discretion standard. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). We will find that a district court has abused its discretion if "it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003) (citing *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)). In applying this standard to a decision concerning the withdrawal of a guilty plea, "[w]e recognize that the circumstances . . . and judgments required are particularly difficult for any district judge and review with that in mind." *United States v. McCoy*, 155 F. App'x 199, 202 (6th Cir. 2005). The defendant has the burden of demonstrating that proper grounds exist to grant a motion to withdraw a guilty plea. *See Dixon*, 479 F.3d at 436 (citing *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)).

Federal Rule of Criminal Procedure 11(d) requires that a defendant must "show a fair and just reason for requesting the withdrawal" of a guilty plea prior to sentencing. Fed. R. Crim. P. 11(d)(2)(B). Rule 11(d) allows for a "hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). The purpose of the rule is "not to allow a defendant to make a tactical decision to enter a plea, wait several weeks,

4

and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* (internal quotation and citation omitted).

To determine whether Jannuzzi has established a fair and just reason to withdraw his guilty plea, we consider a number of factors, which include the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded by statute on other grounds as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000); *see also United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). Jannuzzi argues that balancing these factors leads to a conclusion that the district court erred in refusing to allow Jannuzzi to withdraw his guilty plea. Specifically, Jannuzzi notes that he filed his motion to withdraw his plea thirty days after having entered it and on the day after his new counsel formally entered his appearance. Jannuzzi maintains that his prior attorney Bradley pressured him into signing the plea agreement and falsely informed him that there were alternative sentencing options available such as home confinement and probation. Finally, Jannuzzi reminds us that this is his first brush with the criminal justice system, and he had no reason to understand the complex proceedings surrounding the entry of a guilty plea and its ramifications.

Jannuzzi is correct that the thirty-day period between his August 7 plea of guilty and his September 7 motion to withdraw his plea weighs in his favor. However, our case law instructs that at best it weighs only slightly toward Jannuzzi's benefit. While we have allowed for the withdrawal

5

of a guilty plea in an unpublished case when the defendant made his intention to withdraw his plea known within 30 days, *McCoy*, 155 F. App'x at 203, we have also rejected similar appeals that stray not too far outside of this time period. *See United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five days); *cf. United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (seventy-seven days), *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (sixty-seven days), *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five days). In *Spencer*, we noted the language of the D.C. Circuit, which observed that "the courts look with particular favor on . . . motions made . . . *within a few days after the initial pleading*." 836 F.2d at 239 (quoting *United States v. Roberts*, 570 F.2d 999, 1008 (D.C. Cir. 1977) (emphasis added)). We also cited with approval the Fifth Circuit's refusal to allow a defendant to withdraw his guilty plea when only twenty-two days had passed. *Id.* (citing *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)). Thus, Jannuzzi's period of delay is at the boundary line between what is acceptable and what is not. Regardless of the weight given to the timeliness factor, however, a defendant needs the remaining factors viewed as a whole to weigh in his favor to demonstrate an entitlement to relief. *See Dixon*, 479 F.3d at 436-37.

Jannuzzi's arguments regarding factors two and four are linked. Jannuzzi asserts that his attorney at the time of his change-of-plea hearing pressured him into quickly signing the plea agreement and assured him that alternative sentences were available. Only upon his hiring of new counsel, Jannuzzi claims, did he come to realize that he faced at least a mandatory five-year prison sentence. The record refutes both of Jannuzzi's principal contentions. The plea agreement contains bold-faced headings labeled "**Defendant is Satisfied with Assistance of Counsel**," "**Agreement**

6

is Complete and Voluntarily Entered,"and "**Minimum sentence must include imprisonment**."

At the bottom of each page containing these bold-faced headings are Jannuzzi's initials.

The district court did not allow these textual statements to suffice. During the plea colloquy, Jannuzzi answered "Yes" when the district court inquired as to whether Jannuzzi was "satisfied with Mr. Bradley so far." Jannuzzi also denied that "anyone made any threats or promises other than what's set forth in this plea agreement to either force or to compel [him] to enter a plea of guilt." The district court twice reminded Jannuzzi that "there will not be probation in this case" and that "the offenses charged in Counts 1 and 2 [to which Jannuzzi pled] may not be satisfied by a term of probation and must include imprisonment of not less than five years." Jannuzzi acknowledged that he understood the consequences of his plea. Finally, just before Jannuzzi entered his formal pleas of guilty, the district court checked once again "to make sure [Jannuzzi] had sufficient time to sit down with Mr. Bradley and go over all the things [the court has] just mentioned . . . in detail, and to have Mr. Bradley answer any of [Jannuzzi's] questions to [his] satisfaction." It is difficult to see how much more specific the district court could have been in making certain that Jannuzzi knew the sentencing consequences of his plea and probing whether Jannuzzi's counsel had adequately represented Jannuzzi's interests. We therefore find that factors two and four weigh strongly against Jannuzzi, as the circumstances surrounding Jannuzzi's plea offered him numerous opportunities to bring to the district court's attention any deficiencies; and Jannuzzi fails to explain persuasively why he failed to take advantage of those chances.

Our conclusions as to factors two and four are bolstered when we turn our attention to factors five and six, which examine the defendant's nature and background and whether he has had any prior experience with the criminal justice system, respectively. As the district court noted, Jannuzzi "is

not someone who doesn't possess intelligence." This is borne out by the one question Jannuzzi did ask during the plea colloquy. Following the district court's explanation of the plea agreement's terms concerning the advisory Sentencing Guidelines calculation, Jannuzzi inquired as to why his offense level was based upon six hundred images when "on the previous page [of the agreement] it said 76 [images] and 36 [videos]." The district court ordered the government to explain to Jannuzzi that under the relevant Guideline provision, "each video clip is to be counted as 75 images." *See also* U.S.S.G. § 2G2.2 n.4(B)(ii). While it is true that Jannuzzi had no prior criminal history before his arrest for these offenses, his question to the district court reveals someone who was keenly aware of the nature and content of the proceedings then occurring. Jannuzzi's question was detailed and specific and involved the calculations that the district court would employ to aid it in its determination of his prison sentence. Far from being on "auto pilot," Jannuzzi was in full command of his senses. Jannuzzi's response to the government's explanation of the Guidelines calculations reveals that he had ample opportunity to review the terms of his plea and had in fact done so: "Mr. Bradley did mention that to me *a few days ago*. I just thought they would have it all accounted for in there. I apologize." (emphasis added) Consequently, we find that factor five weighs against Jannuzzi, as he clearly had the requisite intelligence to understand what was occurring and has no ailments that would place undue pressure upon him. While he has no prior experience with the criminal justice system, we find that the sixth factor's weight is lessened because his lack of prior experience clearly did not impede his ability to comprehend the intricacies of modern criminal sentencing.

Finally, we note that factor three also does not weigh in favor of Jannuzzi. At no time during the plea hearing did Jannuzzi protest his innocence. Only upon further consideration of the length

of his incarceration did Jannuzzi decide that "pleading guilty is not in his best interest" and therefore "wish[] to maintain his innocence." *Cf. McCoy*, 155 F. App'x at 200, 203 (allowing withdrawal where the defendant himself sought to have the indictment dismissed and then attempted to fire his counsel at the plea hearing).[1]

### III.

We find that in weighing all of the *Bashara* factors together, Jannuzzi has failed to demonstrate that he has presented a "fair and just reason" for withdrawing his plea. Fed. R. Crim. P. 11(d)(2)(B). Instead, Jannuzzi's motion appears to be that of a defendant who now feels that "he made a bad choice in pleading guilty." *Alexander*, 948 F.2d at 1004 (internal quotation and citation omitted). Rule 11 does not grant relief under such circumstances. Consequently, we affirm the judgment of the district court denying Jannuzzi's motion to withdraw his guilty plea.

---

[1]Unless the defendant establishes that the other factors viewed as a whole weigh in his favor, a court need not consider, under factor seven, whether the defendant's motion to withdraw his plea prejudices the government. *See Spencer*, 836 F.2d at 240.